UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LN Management LC Series 5271 Lindell,<br><br>    Plaintiff<br><br>v.<br><br>Estate of Anne Piacentini; Federal National Mortgage Association, and Federal Housing Finance Agency as Conservator for Fannie Mae,<br><br>    Defendants<br><br>AND ALL RELATED CLAIMS | 2:15-cv-00131-JAD-NJK<br><br>**Order Denying Fannie Mae and the FHFA's Second Motion for Summary Judgment and Staying this Case Pending the Mandate in *Bourne Valley*** <br><br>**[ECF 63]** |

This case concerns the legal interests that remain in a Las Vegas home after a 2013 non-judicial foreclosure sale by The Keys Condominiums homeowners association ("the HOA"). The purchaser of the property contends that, because the HOA had a true superpriority lien under Nevada's lien laws, the foreclosure extinguished any lender's security interest, and it sues for clear title. But Fannie Mae and its conservator the Federal Housing Finance Agency ("FHFA") contend that, because Fannie Mae was the lender who held the beneficial interest in the deed of trust, the federal foreclosure bar in 12 U.S.C. § 4617(j)(3) prevented this sale from wiping out this security interest while Fannie Mae was under the FHFA's conservatorship.

Fannie Mae and the FHFA moved for summary judgment last year, arguing that §4617(j)(3)'s foreclosure bar prevented the HOA sale from extinguishing Fannie Mae's interest in the property.[1] I held that § 4617(j)(3) preempts Nevada law to the extent the HOA's foreclosure might have otherwise extinguished a Fannie Mae first-trust-deed interest, but I denied the motion because Fannie Mae and the FHFA had not established that this deed of trust was their property at the time of the HOA sale.[2] Fannie Mae's Assistant Vice President attested that cryptic computer records reflect that

---

[1] ECF No. 26.

[2] ECF No. 59.

Fannie Mae bought the mortgage in 1998[3] and the deed of trust was held by CitiMortgage, Inc. until after the foreclosure when it assigned the deed of trust to Fannie Mae.[4] Although separating a loan from the deed of trust that secures it may not render the loan unsecured if the note holder can require that it be assigned the deed of trust,[5] whether this power was a feature of Fannie Mae and CitiMortgage's relationship was not evident.

Fannie Mae and the FHFA now renew their motion with more proof that CitiMortgage was Fannie Mae's loan servicer, and they offer some of the terms of that relationship. This evidence tips the scales slightly more in Fannie Mae and the FHFA's favor, but it does not eliminate the genuine issues of fact that prevent me from granting summary judgment. And because further resolution of this case may turn on the legal effect of the HOA's non-judicial foreclosure sale—a statutory procedure whose constitutionality has been called into question by a Ninth Circuit panel's recent ruling in *Bourne Valley Court Trust v. Wells Fargo Bank*[6]—I *sua sponte* stay all further proceedings in this case until the Ninth Circuit issues its mandate in *Bourne Valley*.

**Discussion**

**A.   The State of the Record**

I described the history of the condominium home that is the subject of this litigation—5271 Lindell Road #204 in the Keys Condominium development in Las Vegas, Nevada[7]—in my earlier summary-judgment order.[8] I do not repeat it here.

When I last considered summary judgment in this case, the recorded documents did not

---

[3] ECF No. 26-2 at ¶ 4.

[4] *Id*.; *see also* ECF 27-1 at 20 (2/26/14).

[5] *In re Montierth*, 354 P.3d 648, 650–51 (Nev. July 30, 2015).

[6] *Bourne Valley Ct. Trust v. Wells Fargo Bank*, 2016 WL 4254983, at *5 (9th Cir. Aug. 12, 2016).

[7] ECF No. 27-1. I grant the FHFA's and Fannie Mae's request that I take judicial notice of the documents that are a matter of public record. ECF 65; Fed. R. Evid. 201(c)(2).

[8] ECF No. 59 at 3–5.

reflect Fannie Mae's fingerprints on this property until two months after the foreclosure sale,[9] and it appeared that the beneficiary of the deed of trust at the time of foreclosure was CitiMortgage's predecessor, Citicorp Mortgage.[10]  In an attempt to demonstrate that Fannie Mae—not Citicorp—held this interest in the property, Fannie Mae offered the declaration of AVP John Curcio.  He attested that Fannie Mae's computer system reflects that it acquired the loan on this property "from CitiMortgage, Inc. on or about January 1, 1998" and "has owned it ever since."[11]  And he stated that "the rights to service the Loan for Fannie Mae were transferred from CitiMortgage, Inc. to Fannie Mae (with Seterus, Inc. as sub-servicer for Fannie Mae) effective January 31, 2014," so CitiMortgage must have been the servicer of the loan for Fannie Mae prior to January 31, 2014.[12]  The printouts that AVP Curcio purported to be interpreting were too cryptic to provide further information.[13] There was no document assigning the note or the deed of trust to Fannie Mae in 1998 or suggesting the terms of that assignment.  What rights and responsibilities enure to the "servicer" role were not described.[14]  There was also no document connecting CitiMortgage and Citicorp.[15]

Fannie Mae and the FHFA now renew their motion with more evidence.[16]  They bridge the gap between CitiMortgage and Citicorp with the company's name-change amendment from the Delaware Secretary of State.[17]  AVP Curcio has added a paragraph to his declaration that states that "The Fannie Mae Single-Family Servicing Guide," publicly available on Fannie Mae's website,

---

[9] *Id*. at 4 (citing ECF 27-1 at 20 (Corporate Assignment of Deed of Trust)).

[10] *Id*. (citing ECF 27-1 at 15 (11/7/97 Assignment of Deed of Trust from North American Mortgage Co. to Citicorp Mortgage, Inc.)).

[11] *Id*. (citing ECF 26-2 at ¶ 4).

[12] *Id*. at ¶ 5.

[13] *Id*. at 11.

[14] *Id*. at 5.

[15] *Id.*

[16] ECF No. 63.

[17] ECF No. 65-1 at 21–22.

"serves as a central document governing the contractual relationship between Fannie Mae and its servicers nationwide, including CitiMortgage, Inc."[18]  Fannie Mae and the FHFA have also added the declaration of a CitiMortgage Business Operations Analyst who reviewed her company's computer database and gleaned from it that CitiMortgage "was the servicer" of the loan "for Fannie Mae" from January 1, 1998, to January 31, 2014.[19]  They still do not provide the document assigning the note to Fannie Mae or any hint as to its terms, and they offer no servicing contract with CitiMortgage.  They argue instead that the Guide controls and proves that Fannie Mae had the right to the loan and the deed of trust that secures it at all relevant times.[20]

**B.    Fannie Mae's Ability to Compel CitiMortgage to Assign the Deed of Trust Remains a Genuine Issue of Material Fact that Precludes Summary Judgment.**

Fannie Mae's supplemental information helps its ownership claim to the note and the deed of trust, but it does not eliminate all genuine issues of material fact.  AVP Curcio tells me that the Guide is only "*a* central document" setting the terms of the relationship between Fannie Mae and CitiMortgage, suggesting that there are more documents and terms that Fannie Mae is not providing me.[21]  The Guide explains that, even when the servicer "appears in the land records as the mortgagee to facilitate performance of the servicer's contractual responsibilities, . . . Fannie Mae may take any and all action with respect to *the mortgage loan* it deems necessary to protect its . . . ownership of the mortgage loan."[22]  Whether this Guide provision was in effect during the December 2013 foreclosure sale is unclear because this section of the Guide bears the date 11/12/2014, and the copy Fannie Mae

---

[18] *Compare* ECF No. 26-2 at 4 with ECF No. 63-1 at 3.  Curcio also describes how I can find archived version of the Guide by clicking various links on Fannie Mae's website.  ECF No. 63-1 at 3, ¶ 6.

[19] ECF No. 63-2 at 3–4.

[20] ECF No. 63 at 4–5, 12–13.

[21] ECF No. 63-1 at ¶ 6.

[22] ECF No. 65-1 at 32 (emphasis added).

provides appears to have a print date of 10/14/2015.[23] But even if I assume that this Guide provision was in effect on the foreclosure date, it says nothing of the right to force the assignment of *the deed of trust*.

Fannie Mae and the FHFA then refer me to Guide provision A2-5.1-02, which they contend stands for the proposition that the servicer has no right to possession of the deed of trust.[24] Even if this Guide provision precluded CitiMortgage from possessing the deed of trust, other evidence reflects that CitiMortgage did, in fact, possess that security instrument: (1) when the original deed of trust was assigned to CitiMortgage's predecessor in 1997, the assignment transferred "all beneficial interest under" that deed of trust, including "all rights accrued or to accrue under" it[25]; and (2) CitiMortgage's Vice President of Document Control, Ockee Johnson, attests in a January 10, 2014, Affidavit of Authority to Exercise the Power of Sale that CitiMortgage is "the current beneficiary of record of the Deed of Trust."[26] More importantly, this provision says nothing of Fannie Mae's power to compel CitiMortgage to assign it the deed of trust in December 2013.

The absence of this evidence is key. When the Nevada Supreme Court held in *In re Montierth* that Deutsche Bank's mortgage loan was still secured by the deed of trust even though MERS—not Deutsche Bank—was the beneficiary under that deed of trust, it did so because "the deed of trust . . . designated MERS as nominee, or agent, for the note holder and the note holder could compel an assignment of the deed of trust."[27] So the court was able to conclude that "an agency relationship exist[ed] between" the holder of the note and the beneficiary of the deed of trust "such that the note holder, as principal, could require its agent [the beneficiary of the deed of trust] to

---

[23] *Id*.

[24] ECF No. 63 at 5 (citing ECF No. 65-1 at 61).

[25] ECF No. 65-1 at 15.

[26] ECF No. 67 at 16.

[27] *In re Monteirth*, 354 P.3d at 651.

assign the mortgage to it," and thus "the note remain[ed] secured."[28]  But the assignment that resulted in CitiMortgage's beneficial ownership of this deed of trust has no similar language.[29]  The assignment states that North American Mortgage Company "hereby grants, conveys, assigns and transfers to [CitiMortgage] all beneficial interest under" the original deed of trust signed by the homeowner "[t]ogether with the note . . . the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust."[30]  And despite their references to various Guide provisions,[31] the movants have pointed to no *Montierth*-like contractual language that gave Fannie Mae the power to compel CitiMortgage to assign this deed of trust to Fannie Mae at the time of the December 2013 HOA foreclosure sale.

     Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[32]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[33]  If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the

---

[28] *Id.* at 651.

[29] *See* ECF No. 65-1 at 15.

[30] *Id*.

[31] Fannie Mae and the FHFA invite me to take judicial notice of the entire Guide and to use the interactive version on Fannie Mae's website to click through it.  ECF No. 63 at 4, n.2.  In *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003), the Ninth Circuit denounced the "spaghetti approach" to briefing in which a party "heav[es] the entire contents of a pot against the wall in hopes that something w[ill] stick."  I decline "to sort through the noodles" to piece together a better Guide-based argument than these movants have articulated.  *Id*.  "As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'"  *Id.* (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)).

[32] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[33] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

facts are undisputed, and the case must then proceed to the trier of fact.[34] Only when the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact does the burden shift to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for as to the material facts."[35] Because the record still does not demonstrate as a matter of law that Fannie Mae held the deed of trust, or had the power to require CitiMortgage to assign it to Fannie Mae at the time of this 2013 foreclosure, genuine issues of fact continue to preclude summary judgment in Fannie Mae and the FHFA's favor.

**C.     This Case Is Temporarily Stayed.**

Because further proceedings may turn on the legal viability of this nonjudicial foreclosure sale, I now stay this case until we have further guidance from the Ninth Circuit on that issue.

Last month, two members of a Ninth Circuit panel held in *Bourne Valley Court Trust v. Wells Fargo Bank* that Chapter 116's nonjudicial foreclosure scheme "facially violated mortgage lenders' constitutional due process rights" before it was amended in 2015.[36] The purchaser has filed a petition for rehearing, and the Circuit has directed a response. To save the parties from the need or inclination to invest resources briefing the effect of the *Bourne Valley* opinion before those post-opinion motions are exhausted, I *sua sponte* stay all proceedings in this case pending the Ninth Circuit's issuance of the mandate.

A district court has the inherent power to stay cases to control its docket and promote the efficient use of judicial resources.[37] When determining whether a stay is appropriate pending the resolution of another case—often called a "*Landis* stay"—the district court must weigh: (1) the possible damage that may result from a stay, (2) any "hardship or inequity" that a party may suffer if

---

[34] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[35] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[36] *Bourne Valley Ct. Trust*, 2016 WL 4254983, at *5.

[37] *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936); *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

required to go forward, (3) "and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law" that a stay will engender.[38]  After weighing these considerations, I find that a *Landis* stay is appropriate here.  I address these considerations in reverse order.

### 1. A stay will promote the orderly course of justice.

At the center of this case is an HOA-foreclosure sale under NRS Chapter 116 and the competing arguments that the foreclosure sale either extinguished the bank's security interest under the *SFR* holding or had no legal effect because the statutory scheme violates due process.[39]  The *Bourne Valley* opinion and any modification of that opinion have the potential to be dispositive of this case or at least of discrete issues that it presents.  As the jurisprudence in this area of unique Nevada law continues to evolve, the parties file new motions or move to supplement the ones that they already have pending, often resulting in docket-clogging entries and an impossible-to-follow chain of briefs in which arguments are abandoned and replaced.  Staying this case pending the mandate in *Bourne Valley* will permit the parties to evaluate—and me to consider—the viability of the claims under the most complete precedent.  This will simplify and streamline the proceedings and promote the efficient use of the parties' and the court's resources.

### 2. Hardship and inequity balance in favor of a temporary stay.

Both parties face the prospect of hardship if I resolve the claims or issues in this case before the Ninth Circuit issues the mandate in *Bourne Valley*.  A stay will prevent unnecessary briefing and the expenditures of time, attorney's fees, and resources that could be wasted—or at least prematurely spent—should the panel or the *en banc* court issue a subsequent opinion.

### 3. Damage from a stay is minimal.

The only potential damage that may result from a stay is that the parties will have to wait longer for resolution of this case and any motions that they intend to file in the future.  But a delay would also result from any rebriefing or supplemental briefing that may be necessitated if the panel

---

[38] *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

[39] *See* ECF No. 1 at 6–8.

or the *en banc* court rehears the matter.  So it is not clear to me that a stay pending the *Bourne Valley* mandate will ultimately lengthen the life of this case.  I thus find that any possible damage that a stay may cause the parties is minimal.

### 4. *The length of the stay is reasonable.*

Finally, I note that the stay of this case pending the *Bourne Valley* mandate is expected to be reasonably short.  The petition for rehearing has been filed and a response has already been ordered.  Because the length of this stay is directly tied to the Circuit's issuance of its mandate in *Bourne Valley*, it is reasonably brief and not indefinite.

## Conclusion

IT IS THEREFORE ORDERED that Fannie Mae and the FHFA's Motion for Summary Judgment **[ECF 63] is DENIED.**

IT IS FURTHER ORDERED that **this case is administratively STAYED**.  Once the Ninth Circuit issues the mandate in *Bourne Valley Court Trust v. Wells Fargo Bank*, case number 15-15233 (2:13-cv-649-PMP-NJK), any party may move to lift the stay.  Until that time, all proceedings in this action are stayed with one exception: **this stay has no impact on any party's obligation to timely serve process and file proof of service.**

Dated this 23rd day of September, 2016

_____
Jennifer A. Dorsey
United States District Judge